**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   CATHY BURGESS, ELUM BURGESS, and        No. C01-04098 MJJ
     SHELA BURGESS, by and through her guardian
12   ad litem, CATHY BURGESS,                **ORDER ON MOTION FOR SUMMARY**
                                             **JUDGMENT**
13                  Plaintiffs,
14      v.
15    HOUSING AUTHORITY OF ALAMEDA
      COUNTY, *et al.*,
16
                    Defendants.
17   _____/
18
19          Pending before the Court is Defendants County of Alameda, Housing Authority of Alameda
20   County ("ACHA"), Ophelia Basgal, Navdeep Barn, and Donna Payne's (collectively, "Defendants")
21   Motion for Summary Judgment (Doc. #169).  Plaintiffs Cathy Burgess ("Ms. Burgess"), Elum Burgess,
22   and Shela Burgess (collectively, "Plaintiffs") have filed an Opposition (Doc. #178), to which Defendants
23   filed a Reply (Doc. #182).  Pursuant to the Court's Order (Doc. #191), Plaintiffs filed a supplemental
24   brief (Doc. # 198), as did Defendants (Doc. # 199).  For the following reasons, the Court **GRANTS IN**
     **PART AND DENIES IN PART** Defendants' Motion as set forth in this decision.
25
26   **I.     Background**
27          This case arises from Ms. Burgess's attempt to secure a Section 8 apartment in Concord in the
28   Fall of 1999 for herself and her two children, Plaintiffs Elum and Shela Burgess.  Toward this end, Ms.
     Burgess sought to transfer her Section 8 voucher from ACHA to the Housing Authority of the County
     of Contra Costa ("HACCC").  Because she suffers from disabilities due to agoraphobia, severe anxiety,

depression, difficulty concentrating, and fear of people, Ms. Burgess requested that ACHA assist her in transferring the voucher. Plaintiffs allege that ACHA provided Ms. Burgess with inadequate, confusing, and misleading information about how to transfer the voucher, refused to allow her to personally deliver the required "portability" paperwork, and assured her that they would transfer the paperwork for her, but either failed to make the transfer or did so incorrectly. As a result, the portability paperwork never arrived at HACCC, and Plaintiffs were unable to rent the apartment in Contra Costa County. Thereafter, Ms. Burgess's Section 8 voucher expired when she did not find another apartment within the allotted amount of time. Plaintiffs further allege that Defendants failed to grant Ms. Burgess' request for a reasonable accommodation of her disabilities by allowing her an extension of time to use the Section 8 voucher. Consequently, Plaintiffs allege that they became homeless for over a year.

Based on the foregoing events, on November 1, 2001, Ms. Burgess filed a Complaint against Alameda County and ACHA. Subsequently, on October 31, 2002, the Court granted ACHA's motion to dismiss the Complaint. Ms. Burgess thereafter appealed, and the Ninth Circuit affirmed in part, reversed in part, and remanded the matter back to this Court. On November 9, 2004, the Court ordered Ms. Burgess to file an Amended Complaint. Soon thereafter, in December 2004, Plaintiff was appointed *pro bono* counsel. In July 2005, Elum Burgess filed a Complaint against the County and ACHA.[1] On November 3, 2005, the Court granted Plaintiffs leave to file a Second Amended Complaint. In their Second Amended Complaint, Plaintiffs assert claims for: (1) violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604; (2) violation of the Americans with Disabilities Act, 42 U.S.C. §§ 1201, *et seq.*; (3) violation of the Civil Rights Act, 42 U.S.C. § 1983; (4) violation of California's Unruh Civil Rights Act, California Civil Code § 51; (5) violation of California Government Code § 11135; (6) negligence; and (7) negligent infliction of emotional distress.

Defendants now move to for summary judgment on each of Plaintiffs' claims.

## II.    Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial

---

[1]The parties thereafter stipulated to consolidate Ms. Burgess's action with Elum Burgess's action.

United States District Court
For the Northern District of California

burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

**III.    Discussion**

      **A.    Factual Background**

      Except as indicated, the following facts are undisputed.

      In September 1999, Ms. Burgess and her children lived in Hayward, California, in an apartment that was partially paid for through Section 8 assistance administered by ACHA. (Basgal Aff. at ¶5.) Around this time, Ms. Burgess began looking for a larger apartment. (Burgess Decl. at ¶5.) In early September, Ms. Burgess located an apartment in the Driftwood Apartments complex in Concord, California, and submitted an application for an apartment. (Burgess Decl. at ¶5.) Because the Driftwood apartment was in Concord, which is in Contra Costa County, Ms. Burgess had to exercise portability to transfer her Section 8 voucher from ACHA to HACCC. (Burgess Decl. at ¶5.)

      Ms. Burgess had previously navigated the portability process when she moved from Provo, Utah to Hayward, California. (Basgal Aff. ¶ 6) Defendants contend Ms. Burgess had moved several times while living in ACHA's jurisdiction without extra assistance. (Supp. Kiniyalocts Aff. at ¶ 7, Ex. DD, Basal Depo. At 37:17-38:8.)

**United States District Court**
For the Northern District of California

On September 8, 1999, Ms, Burgess came to the ACHA office, completed a Leasing Services form, and requested an appointment to be re-certified, so that she could move to Concord.  (*Id.*)  At that time, Ms. Burgess also requested that her Social Security information be faxed to Driftwood Apartments in Concord.  (*Id.*)  Ms. Barn, an ACHA Housing Specialist, attempted to contact Ms. Burgess to determine whether she had given her landlord a 30-day notice, but was unable to reach Ms. Burgess. (*Id.*)

On September 11, 1999, Ms. Barn received a fax from Driftwood Apartments requesting that ACHA verify Ms. Burgess's Section 8 eligibility and a copy of Ms. Burgess's Social Security card. (Barn Aff. at ¶6.)  According to Ms. Barn, on September 13, 1999, she faxed the requested documents to Driftwood Apartments and sought confirmation from Driftwood that it had received the information. (*Id.* at ¶7.)  Thereafter, Ms. Burgess completed a rental application for an apartment at Driftwood Apartments.  (Burgess depo. at 53:2-5.)  Driftwood Apartments, however, did not have a unit available at that time.  (*Id.* at 53:19-58:2.)  Ms. Burgess, however, informed Ms. Barn that there was a unit available at Driftwood.  (Barn Aff. at ¶5.)

On September 17, 1999, Ms. Barn sent Ms. Burgess a checklist for moving that indicated that Ms. Burgess had to give her landlord 30 days written notice of her intent to move.  (Barn Aff. at ¶5.) Plaintiffs claim that no one at ACHA ever informed Ms. Burgess of the short time frame required to complete the portability process before her 30-day notice expired.  (Burgess. Decl. at ¶6.)  On September 20, 1999, Ms. Burgess gave her landlord a handwritten 30-day notice.  (Barn Aff. at ¶9.)  On the same date, Ms. Burgess's landlord provided her with an Acknowledgment of Notice to Vacate form, wherein the landlord accepted her 30-day written notice.  (Barn Aff. at ¶11.)

On October 13, 1999, ACHA Eligibility Technician, Ms, Payne, had an appointment with Ms, Burgess to re-certify her to participate in the Section 8 Rental Voucher Program.  (Payne Aff. at ¶4.) According to Plaintiffs, ACHA's failure to promptly schedule the re-certification meeting until October 13, 1999, left Ms. Burgess with a 7-day window to complete the portability process before she was to vacate her apartment.  (Opp. at 4.)  Ms. Burgess states that no one at ACHA advised her "that this serious problem was on the horizon and nobody offered her any assistance in averting it."  (Opp. at 4. (Citing Burgess Decl. at ¶7).)  Ms. Payne re-certified Ms. Burgess and issued Ms. Burgess a voucher

United States District Court

For the Northern District of California

1  that permitted her to select a private-sector rental unit in Contra Costa County that expired on February

2  10, 2000.  (Payne Aff. at ¶¶4-5 & ex. N.)  Accordingly, on October 13, 1999, Ms. Burgess had 120 days

3  to secure housing in Contra Costa County.  (*Id.*)  Plaintiffs claim that, during her meeting with Ms.

4  Payne, Ms. Burgess asked if she could hand deliver the portability packet to the HACCC.  (Burgess.

5  Decl. at ¶7.)  According to Ms. Burgess, Ms. Payne rejected Ms. Burgess's request and informed Ms.

6  Burgess that she would fax the paperwork to the HACCC.  (Burgess Decl. at ¶7.)  Ms. Burgess avers

7  that she later called HACCC and HACCC indicated that it did not have her paperwork and could not

8  assist her until HACCC received it.  (Burgess Decl. at ¶7.)

9        Thereafter, on October 25, 1999, Ms. Barn sent ACHA's accounting department a form that

10  placed a hold on housing assistance payments to Ms. Burgess's landlord in Hayward, effective

11  November 1, 1999.  (Barn Aff. at ¶12.)  Thus, Ms. Burgess's housing assistance payments were to end

12  October 31, 1999.  (Barn Aff. at ¶12.)  On October 26, 1999, Ms. Barn sent ACHA's accounting

13  department a cancellation form effective October 26, 1999.  (Barn Aff. at ¶13.)  This form meant that

14  Ms. Burgess "went portable," meaning that she had vacated her unit in Hayward to move to another

15  Public Housing Agency's jurisdiction.  (Barn. Aff. at ¶13.)

16        After Ms. Burgess' lease at the Hayward apartment expired, and she and her family had to move

17  out.  (Burgess Decl. at ¶8.)

18        According to Ms. Barn, on October 27, 1999, she prepared and mailed a portability packet that

19  included a copy of Ms. Burgess's voucher, the most recent income and family eligibility information,

20  including birth certificates and Social Security numbers.  (Barn Aff. at ¶14.)  Ms. Barn states that, once

21  ACHA sent the portability packet to HACCC, it was Ms. Burgess's responsibility to go to the HACCC

22  to complete the portability process.  (Barn Aff. at ¶15.)  Defendants claim that Ms. Burgess never went

23  to HACCC's office to complete the process.

24        According to Ms. Burgess, in December 1999, another apartment became available in the

25  Driftwood complex.  (Burgess Decl. at ¶9.)  Ms. Burgess called ACHA and indicated that the HACCC

26  had not received her portability packet.  (Barn Aff. at ¶17.)  Ms. Barn attests that, in response, she set

27  a second copy of Ms. Burgess's portability packet to the HACCC.  (Barn Aff. at ¶17.)  During her

28  deposition, Ms. Burgess admitted that she has no personal knowledge as to whether Ms. Barn or anyone

United States District Court

For the Northern District of California

1  else at ACHA sent the portability packet to HACCC. (Burgess depo. at 67:10-13; 22.) Ms. Burgess also

2  testified that she did not know whether the HACCC ever received the portability packet. (Burgess depo.

3  at 69:22-25.)

4       Ms. Burgess states that, by January 2000, Driftwood had cancelled her application for an

5  apartment, and Plaintiffs were homeless. (Burgess Decl. at ¶8.) According to Defendants, on January

6  20, 2000, Ms. Burgess went to ACHA's office and spoke with two Housing Specialists, Ramona Flores

7  and Peggy Venderbeek, about obtaining an extension of her voucher. (Barn Aff. at ¶18.) Ms, Barn

8  states that, although Ms. Flores and Ms. Venderbeek asked Ms. Burgess to have a seat in the lobby while

9  they located Ms. Barn, when Ms. Barn went to the lobby to speak to Ms. Burgess, she was no longer

10  there. (Barn Aff. at ¶18.) Ms. Barn states that Ms. Burgess did not leave an address or phone number

11  where she could be reached. (Barn Aff. at ¶18.)

12       Thereafter, on January 28, 2000, ACHA received an undated letter from Ms. Burgess, wherein

13  she requested a voucher extension. (Barn Aff. at ¶19.) Two days later, on January 31, 2000, Ms. Barn

14  wrote a note to her supervisor, Marilyn Quinn, recommending that Ms. Burgess's voucher be extended

15  for 30 days. (Barn Aff. at ¶20.) Ms. Quinn subsequently met with Kurt Wiest, the Deputy Director of

16  the Alameda County Housing Authority, on February 9, 2000, to discuss Ms. Burgess's request for a

17  voucher extension. (Wiest Aff. at ¶5.) Ms. Wiest approved the 60-day extension on Ms. Burgess's

18  voucher, with a new voucher expiration date of April 9, 2000. (Wiest Aff. at ¶5.) Five days later, on

19  February 14, 2000, Ms. Burgess was in ACHA's office to review and sign the voucher extension.

20  (Wiest Aff. at ¶7.)

21       Thereafter, Ms. Burgess did not submit a request for lease approval for a unit in Contra Costa

22  County. (Wiest Aff. at ¶8.) Ms. Burgess also admitted during her deposition that she never went to the

23  HACCC to complete the portability process. (Burgess depo. at 68:7-13.) Rather, in February 2000, Ms.

24  Burgess moved to Texas and has lived there since that time. (Burgess depo. at 85:21-24.)

25       After Burgess's voucher expires on April 9, 2000, neither ACHA nor any of its employees had

26  any further contact with Ms. Burgess. (Wiest Aff. ¶¶8-9.)

27       **B.      The County and ACHA's Relationship**

28       Defendants first contend that the County is a separate legal entity from ACHA and therefore

6

cannot be liable for ACHA's or its employees' alleged acts or omissions.  In support, Defendants argue

that California Health and Safety Code § 34240 establishes that  housing authorities are separate legal

entities from the municipalities that create them.  This section provides:

> In each county and city there is a public body corporate and politic
> known as the housing authority of the county or city.  The authority shall
> not transact any business or exercise its powers unless, by resolution, the
> governing body of the county or city declares that there is need for an
> authority to function in it.

Additionally, Defendants assert that California courts have previously held that housing agencies are

created as state agencies and are not agencies of the city, and cite *Housing Authority of City of Los

Angeles v. City of Los Angeles*, 38 Cal.2d 853, 862 (1952), and *People v. Holtzendorff*, 177 Cal. App.

2d 788, 798-99 (1960), in support.  Based on this authority, Defendants assert that the County is a

separate legal entity from ACHA and had no duty to provide Plaintiffs with any information about how

to transfer her Section 8 voucher.  Plaintiffs have failed to present any argument in response on this

issue.  Accordingly, the Court **GRANTS** summary judgment in favor of the County of Alameda on all

of Plaintiffs' claims.

### C.   First Cause of Action - Violation of the Fair Housing Act

In their Second Amended Complaint, Plaintiffs allege that Ms. Burgess is a person with a

"handicap" as defined under the FHA, which "substantially limits her major life activities in ways that

made it imperative for her to have her Section 8 voucher and an accommodation, in the form of (a) the

requested extension that was wrongfully denied by Defendants, and (b) assistance in utilizing and

transferring her Section 8 voucher."  (SAC at ¶¶25-26.)   Plaintiffs allege that Defendants' conduct

violated the FHA, causing Ms. Burgess to lose her Section 8 voucher and causing her and her children

to become homeless.

Defendants first attack Plaintiffs' FHA claim with respect to the Individual Defendants on the

basis that it is time-barred.  Plaintiffs oppose this argument, contending that Plaintiffs timely filed their

FHA claim against the Individual Defendants, and that, in any event, the Second Amended Complaint

naming the Individual Defendants relates back to the initial Complaint, making the claim against the

Individual Defendants timely.  Because the Court finds that even accepting Plaintiffs' position that the

FHA claim is timely against all Defendants, the claim nevertheless fails, the Court turns to the merits

United States District Court
For the Northern District of California

1   of Plaintiffs' FHA claim.

2       Plaintiffs contend that there are triable issues of fact regarding whether Defendants violated the

3   FHA under both failure to accommodate and disparate treatment theories.  For the reasons discussed

4   below, the Court disagrees.

5                              **1.      Failure to Accommodate**

6       Plaintiffs  assert that, "an accommodation was necessary for Plaintiffs to use and enjoy a

7   dwelling - the breakdown of the portability process prevented [Ms. Burgess] from using Section 8 in

8   Concord, and prevented her from obtaining an apartment to use and enjoy."  According to Plaintiffs, Ms.

9   Burgess "needed the Defendants to act with sufficient assiduousness to ensure that she understood the

10  process generally, that portability was proceeding smoothly, and that [Ms. Burgess] understood how and

11  when to act."  Specifically, Ms. Burgess required an accommodation in the form of "close supervision,

12  effective communication and special services to ensure that small problems, snares or mistakes did not

13  have disastrous consequences for the handicapped."  (Plaintiffs' Supp. Brief, 2:4-7.)  For example,

14  Plaintiffs contend that Ms. Barns should have confirmed with Driftwood that there was an available

15  apartment, and that a move-in date had been established for Ms. Burgess (*id.*, 5:15-19); and provided

16  step-by-step guidance on the move-out process and the import providing 30-days' notice (*id.*, 6:1-14).

17  According to Plaintiffs, after Defendants learned that Plaintiffs were homeless, they should have helped

18  Ms. Burgess formulate a step-by-step plan, contact HACCC to diagnose what went wrong, or see if there

19  were other housing options in Contra Costa County.  (*Id.*, 10:7-20.).

20      Defendants argue that Ms. Burgess's FHA claim fails because Ms. Burgess did not request the

21  accommodation she now claims she was entitled to, and, in light of the information available to them,

22  extending Ms. Burgess' Section 8 voucher was a reasonable accommodation. (Defs. Supp. Brief, 5:23-

23  6:1, 7:23-28..)

24      "To make out a claim of discrimination based on failure to reasonably accommodate [under the

25  FHA], a plaintiff must demonstrate that (1) he suffers from a handicap as defined by the FHAA; (2)

26  defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of

27  the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling;

28  and (4) defendants refused to make such accommodation."  *Giebler v. M&B Assocs.*, 343 F.3d 1143,

1 1147 (9th Cir. 2003); *see McGary v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir. 2004). It is generally

2 the responsibility of the individual to request an accommodation unless the need for a particular

3 accommodation is obvious; the ADA does not require clairvoyance. *Walsted v. Woodbury County*, 113

4 F. Supp. 2d 1318, 1335 (N.D. Iowa 2000) (citing *Mole v. Buckhorn Rubber Products, Inc.* 165 F. 3d

5 1212, 1217 (8th Cir. 1999) and *Hedberg v. Indiana Bell Tel. Co.*, 47 F. 3d 928, 934 (7th Cir. 1995)); *see*

6 *also Norris v. Allied-Sysco Food Serv.*, 948 F. Supp. 1418, 1436 (N.D. Cal. 1996).

7       In this matter, it is undisputed that Plaintiff suffers from a mental disability that impaired her

8 thinking, and ability to concentrate and interact with others, and that Defendants knew or reasonably

9 should have known that Plaintiff suffered from a disability.[2]   It is also undisputed, however, that Ms.

10 Burgess did not request any accommodations from Defendants aside from extensions to her Section 8

11 voucher, which Defendants provided. As such, the Court turns its attention to the issues of: (1) whether

12 it was obvious that Ms. Burgess required the extra supervision and services Plaintiffs now claims she

13 was entitled to, and (2) whether the accommodation Defendants did provide–voucher extensions–was

14 sufficient under the circumstances.

15       *Walsted*, cited by Plaintiffs, is instructive as to the first issue. There, as here, the plaintiff

16 suffered from a mental disability that impaired her ability to think, concentrate, and interact with others

17 *Walsted,* 113 F. Supp. 2d at 1329-31. The court found that the plaintiff's failure to specifically request

18 an accommodation was not fatal because there was ample evidence that plaintiff's disability and the need

19 to accommodate it were obvious. *Id.*, 1335-1336. For example, performance evaluations completed

20 over eight years of employment with defendant noted that plaintiff - a janitor - needed extra guidance,

21 supervision, close watching, and assistance in the form of detailed explanations of instructions. *Id.* The

22 plaintiff submitted an affidavit stating that her first two supervisors knew she needed extra training to

23 learn different jobs. *Id.* Also, plaintiff was not allowed to mix chemicals or cleansers alone because

24 defendant knew she could not read. *Id.* Such evidence showed that defendants were aware of plaintiff's

25 disability and the need to accommodate it. *Id.*

26       In the present matter, Plaintiffs have failed to offer evidence showing that it was obvious that

27

28     [2]In their supplemental brief, Defendants, for the first time, contend that Plaintiffs have failed to show that Ms. Burgess was a qualified individual with a disability. Because Defendants failed  to raise this ground for summary judgment in their moving papers, the Court will not consider it.

**United States District Court**

For the Northern District of California

**United States District Court**
For the Northern District of California

1   Ms. Burgess needed extra supervision and special services to navigate the portability process, such as

2   having Ms. Barn independently verify that Ms. Burgess had a firm commitment to move into a

3   Driftwood apartment.   To the contrary, Defendants' evidence indicates that  Ms. Burgess had

4   successfully navigated the portability process before, and had moved several times while living in

5   ACHA's jurisdiction without extra assistance.  It is also undisputed that Ms. Burgess did not inform

6   Defendants until January 2000 that she was homeless (i.e., that she did not secure the Driftwood

7   apartment or other housing).  As such, Defendants could not have known that Ms. Burgess needed the

8   consequences of giving 30-days notice or her options explained to her, or that she needed help securing

9   alternate housing from September-December 1999 as Plaintiffs contend.[3]  In sum, Plaintiffs have failed

10  to show that there is a triable issue of fact as to whether Defendants failed to provide Ms. Burgess with

11  extra assistance in spite of an obvious need between September 1999 and December 1999.

12         Plaintiffs also contend that Defendants did not accommodate Ms. Burgess' disability because,

13  after she sent a letter to Defendants in January 2000 informing them she was homeless and asking for

14  an extension on her Section 8 voucher, they did not help Ms. Burgess formulate a step-by-step plan,

15  contact HACCC to diagnose what went wrong, or see if there were other housing options in Contra

16  Costa County.   However, accepting this argument would turn ACHA, which is responsible for

17  administering the Section 8 program within Alameda County, into a rental agent responsible for locating

18  and placing voucher recipients into housing both inside and outside Alameda County.  Thus, Plaintiffs'

19  claim is not based on Defendants' failure or refusal to provide some exception to its policies or provide

20  some specific support to Ms. Burgess to enable her to complete the portability process, but is based on

21  the notion that once Ms. Burgess indicated that she wanted to move to Alameda County, Defendants

22

23         [3]To the extent that Plaintiffs contend that ACHA's failure to timely send Ms. Burgess' portability packet amounts
24  to a failure to accommodate her disability, this assertion lacks merit.  ACHA's obligation to send portability packages on time
    does not arise from a duty to accommodate a disability; rather, ACHA must send all clients' portability packages on time
    regardless of whether the client is disabled.
25         Similarly, ACHA's alleged failure to follow up with HACCC about Ms. Burgess' portability packet was not a failure
    to accommodate her disability.  In their Opposition, Plaintiffs cite to 24 C.F.R. § 982.355(c)(6)-(c)(9) as setting forth the type
26  of communications that should occur between the initial PHA and the receiving PHA.  They state: "It is important to note
    that, once a transferee PHA receives a portability packet from the initial PHA, it must communicate with the initial PHA
27  regarding a number of issues.  In the absence of such communication, the initial PHA would be on notice that something had
    gone wrong. (Opposition 2:22-3:3.)  This would hold true for any client.  An argument that the duty to follow up arose only
28  because of Ms. Burgess disability compels the conclusion that ACHA is entitled to ignore clear trouble signs for non-disabled
    clients.  The Court will not endorse this notion.

were under the obligation to ensure that she did relocate, including securing housing outside Alameda County. Plaintiffs fail to proffer any authority recognizing such wide-scale overhaul of a landlord or housing provider's duties to accommodate. The only accommodation Ms. Burgess requested in the January 2000 letter was an extension of her Section 8 voucher, which Defendants provided. Under the circumstances, the Court finds that this accommodation was reasonable.

In light of the above, Plaintiffs' accommodation claim under FHA fails.

### 2.   Intentional Discrimination

Additionally, Plaintiffs argue that they have sufficient evidence that Defendants intentionally discriminated against Ms. Burgess. The Court applies the Title VII discrimination analysis in examining discrimination claims under the FHA. *See Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997). To succeed on an intentional discrimination/disparate treatment claim under the FHA, Plaintiffs must first establish a *prima facie* case, consisting of the following elements: (1) Plaintiff's rights are protected under the FHA; and (2) as a result of Defendants' discriminatory conduct, Plaintiffs have suffered a distinct and palpable injury. *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999). Establishing the *prima facie* case gives rise to a presumption of discrimination. *Id.* At that point, the burden then shifts to Defendants to articulate some legitimate, non-discriminatory reason for the action. *Id.* This only requires Defendants to set forth a legally sufficient explanation. *Id.* If Defendants successfully rebut the presumption of discrimination, the burden shifts back to the Plaintiffs to raise a genuine factual question as to whether the proffered justification is pretextual. *Id.* "A plaintiff may succeed in persuading the court that she has been a victim of intentional discrimination 'either directly by persuading the court that a discriminatory reason more likely motivated the [defendant] or indirectly by showing that the [defendant's] proffered explanation is unworthy of credence.'" *Id.* (quoting *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). As in the employment discrimination context, "[p]roof of discriminatory motive is crucial to a disparate treatment claim." *Gamble*, 104 F.3d at 305.

Here, there is no dispute that because of her disabilities, Ms. Burgess's rights are protected under the FHA. Thus, Plaintiffs must show that Ms. Burgess suffered injury as a result of Defendants' discriminatory conduct. For example, in *Harris*, *supra*, the plaintiff, an undisputed member of a

United States District Court

For the Northern District of California

protected class, offered evidence showing that she was subjected to eviction proceedings contrary to established policies and practices, and suffered emotional distress as a result. *Harris*, 183 F.3d at 1052. Here, Plaintiffs argue, "[Ms. Burgess] has alleged, and provided substantial circumstantial evidence to show, that the Defendants refused to act - that despite repeated requests the Defendants refused to send [Ms. Burgess's] portability packet to HACCC." The Court disagrees. While Plaintiffs have offered evidence that HACCC did not receive the portability packet, they have offered no evidence that Defendants "refused" to send it. Nor have they offered evidence that any refusal to allow Ms. Burgess to hand deliver her portability packet to HACCC was contrary to an established policy or practice. As such, the Court finds that Plaintiffs have failed to establish a *prima facie* case of discrimination under the FHA

Even if Plaintiffs had established a *prima facie* case, their FHA claim still fails because they have not created a genuine factual question as to whether Defendants' explanation for why HACCC did not receive the portability packet is pretextual. According to Plaintiffs, "Defendants have alleged that they mailed the portability packet, but Plaintiffs have presented sufficient circumstantial evidence that this did not occur for a jury to infer that the Defendants are hiding the truth- that their claims are merely a pretext for discrimination." The Court finds Plaintiffs' argument insufficient to meet her burden. Specifically, Plaintiffs have failed to cite to any evidence to substantiate their contention that Defendants engaged in discriminatory conduct. While there may be a factual dispute as to whether Defendants properly transferred the portability paperwork to HACCC, Plaintiffs have proffered absolutely no facts supporting a reasonable inference that the impetus for Defendants' conduct was to discriminate against Ms. Burgess because of her disabilities. Rather, Plaintiffs' bare assertion that ACHA's purported failure to send Ms. Burgess's portability packet to HACCC was "a pretext" for discrimination, which is devoid of evidentiary support, amounts to nothing more than speculation, and, more importantly, is insufficient to withstand Defendants' Motion for Summary Judgment.

In sum, the Court finds that Plaintiffs have failed to adduce sufficient evidence to maintain the FHA claim. Plaintiffs have failed to present any evidence that Defendants refused to provide a necessary accommodation to Ms. Burgess because of her handicap, or supporting their claim that Defendants intentionally discriminated against Ms. Burgess because of her handicap. Accordingly, the Court

**United States District Court**
For the Northern District of California

12

**United States District Court**
For the Northern District of California

1   **GRANTS** summary judgment in favor of Defendants on Plaintiffs' FHA claim.

2        **D.   Second Cause of Action - Violation of the Americans with Disabilities Act**

3        Defendants move for summary judgment on Plaintiff's ADA claim on the ground that Plaintiff

4   cannot establish that they were excluded from any services or programs because of Ms. Burgess's alleged

5   disabilities.

6        Title II of the ADA provides that, "no qualified individual with a disability shall, by reason of

7   such disability, be excluded from participation in or be denied the benefits of the services, programs, or

8   activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

9   To state a claim for disability discrimination under Title II, a plaintiff must prove: (1) she is an individual

10  with a disability; (2) she is otherwise qualified to participate in or receive the benefit of some public

11  entity's services, programs, or activities; (3) she was either excluded from participation in or denied the

12  benefits of the public entity's services, programs, or activities, or was otherwise discriminated against

13  by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of her

14  disability. *See McGary*, 386 F.3d at 1265.  As with the FHA, a plaintiff may assert a discrimination claim

15  under the ADA based on disparate treatment, disparate impact, or a failure to reasonably accommodate

16  theory.  *Id*. at 1266.

17       With respect to a reasonable accommodation claim, Plaintiffs bear the initial burden of producing

18  evidence that a reasonable accommodation exists and that this accommodation would enable Ms. Burgess

19  to successfully transfer her portability paperwork to the HACCC.  *See Wong v. Regents of the Univ. of*

20  *Cal.*, 192 F.3d 807, 816 (9th Cir. 1999).  For the reasons set forth in its discussion of Plaintiffs' FHA

21  reasonable accommodation claim, Plaintiffs' ADA reasonable accommodation claim fails, as well.

22  Specifically, Plaintiffs have failed to proffer sufficient evidence showing that Ms. Burgess' need for extra

23  assistance was so obvious that Defendants should have provided it absent a specific request for such an

24  accommodation.  Moreover, extending Ms. Burgess Section 8 voucher was a reasonable accommodation

25  under the circumstances.   Accordingly, the Court **GRANTS** Defendants' Motion with respect to

26  Plaintiffs' reasonable accommodation claim under the ADA.

27       Similarly, Plaintiffs' claim under the ADA based on an intentional discrimination theory of

28  liability fails, as well.  As detailed above, Plaintiffs have failed to proffer any evidence from which a

United States District Court

For the Northern District of California

1  reasonable inference can be drawn that Defendants' alleged failure to process Ms. Burgess portability

2  papers "was  by reason of her disability."  Without some evidentiary support, Plaintiffs' assertion that

3  any breakdown in the portability process was the result of Defendants' discriminatory conduct is merely

4  conjecture, and is insufficient to sustain an intentional discrimination claim under the ADA.

5        Accordingly, because Plaintiffs have failed to proffer sufficient evidence to sustain their ADA

6  claim under either a reasonable accommodation or disparate treatment theory, the Court **GRANTS**

7  summary judgment in favor of Defendants on this claim.

8        **E.       Third Claim for Relief - Violation of Civil Rights Act, 42 U.S.C. §1983**

9        In Plaintiffs' Third Claim for Relief, they allege that Defendants' conduct violated their

10 substantive and procedural due process rights and right to equal protection under the law.  Particularly,

11 they allege that "Defendants and each of them had, or knowingly participated in, an official custom,

12 policy  or practice of: (a) failing to transfer the Section 8 'portability papers' of persons with disabilities

13 and/or failing to ensure that those documents are received by the intended recipients; (b) refusing to

14 provide to persons with disabilities [] their Section 8 'portability papers' so that they may transfer the

15 documents [to] the appropriate housing agency; [and] (c) failing and refusing to [] provide reasonable

16 accommodations to persons with disabilities so that they may effectively utilize and/or transfer to a new

17 housing authority their Section 8 voucher."  (SAC at ¶41.)

18       To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

19 Constitution and laws of the United States, and must show that the alleged deprivation was committed

20 by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48, (1988).

21                 **1.       Equal Protection**

22       "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny

23 to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that

24 all persons similarly situated should be treated alike."  *Lee v. City of Los Aneles*, 250 F.3d 668, 686 (9[th]

25 Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "To state a

26 claim under 42 U.S.C. §1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment

27 a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the

28 plaintiff based upon membership in a protected class."  *Id.*; *see Barren v. Harrington*, 152 F.3d 1193,

**United States District Court**
For the Northern District of California

1   1194 (9th Cir.1998). "In cases where the challenged governmental policy is "facially neutral," proof of

2   its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to

3   show that some invidious or discriminatory purpose underlies the policy." *Id.* (citing *Village of Arlington*

4   *Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-66 (1977)). For purposes of this case, "[b]ecause

5   'the disabled do not constitute a suspect class' for equal protection purposes, a governmental policy that

6   purposefully treats the disabled differently from the non-disabled need only be 'rationally related to

7   legitimate legislative goals' to pass constitutional muster." *Id.* (quoting *Does 1-5 v. Chandler*, 83 F.3d

8   1150, 1155 (9th Cir. 1996)).

9        Defendants urge the Court to grant summary judgment in their favor on Plaintiffs' equal

10  protection claim because Plaintiffs have failed to proffer any support for their allegation that Defendants

11  discriminated against them because of their membership in a protected class. In support, Defendants

12  argue that it is undisputed that they granted Ms. Burgess's request for an extension on her voucher to

13  allow her additional time to secure housing in Contra Costa County, and then granted her an additional

14  60-day extension after the initial 120 period expired. They further contend that it is undisputed that Ms.

15  Burgess never submitted a request for a further extension. Defendants therefore advance that there is no

16  evidence that they discriminated against Ms. Burgess based on membership in any protected class.

17       Plaintiffs counter that Defendants' argument that there is no evidence of discrimination because

18  they granted Ms. Burgess's request ignores the other bases Plaintiffs have asserted in support of their

19  claim. Namely, Plaintiffs assert that "Defendants also violated Plaintiffs' right to equal protection by

20  terminating their Section 8 benefits, failing to ensure that [HACCC] received Plaintiffs' portability

21  packet, refusing to permit Plaintiffs to hand carry the portability packet to [HACCC], requiring Plaintiffs

22  to provide a 30-day notice of intent to vacate their old apartment before [ACHA] would prepare and/or

23  transmit a portability packet, and failing to take appropriate steps, as required by 24 C.F.R. §

24  982.301(a)(4), to ensure effective communication with Ms. Burgess." Plaintiffs' argument, however, is

25  misplaced. As set forth above, to the extent that Plaintiffs seek to rely on ACHA's policies in support

26  of their equal protection claim, they must still prove that the policies have some disproportionate impact

27  on disabled people by showing that the some invidious or discriminatory purpose underlies the policies.

28  As Defendants correctly note, Plaintiffs have failed to proffer any evidence suggesting that any of the

**United States District Court**
For the Northern District of California

1   policies Defendants followed during the portability process had some underlying discriminatory purpose

2   toward disabled tenants.  Nor have Plaintiffs adduced any evidence that, during the portability process,

3   Defendants treated Plaintiffs different than any other person based on Ms. Burgess's disabilities.  Given

4   the complete absence of evidence demonstrating that Plaintiffs received inequitable treatment when

5   trying to transfer their voucher from ACHA to HACCC, the Court finds that Plaintiffs cannot succeed

6   on their equal protection claim.  The Court therefore **GRANTS** summary judgment in favor of

7   Defendants on this claim.

8                     **2.       Due Process Claim**

9                     **a.       Deprivation of a Constitutionally Protected Right**

10         Defendants first contend that, in its May 3, 2004 decision reviewing this Court's dismissal of

11  Plaintiffs' claims under 12(b)(6), the Ninth Circuit held that Plaintiffs had failed to state a legally

12  cognizable due process claim.  *See Burgess v. Alameda County Hous. Auth.*, 2004 WL 958004, at *2 (9th

13  Cir. May 3, 2004).  Specifically, they point out that the Ninth Circuit held that Ms. Burges "is unable to

14  claim an entitlement to a further extension of her Section 8 voucher, as such extensions were

15  discretionary under the regulations in effect at the time [Ms. Burges] made her request."  *Id.* at *4 (citing

16  24 C.F.R. §982.393(b)(1) (1999) ("At its discretion the [housing authority] ay grant a family one of more

17  extensions of the initial term . . . [which] may not exceed a total period of 120 calendar days from the

18  beginning of the initial term.") & 24 C.F.R. §982.303(b)(2) (1999) ("The HUD filed office may approve

19  an additional extension of the term" to accommodate a disabled voucher holder beyond a 120-day

20  extension).  The Ninth Circuit thus concluded that, "[t]hese regulations [] established no legitimate

21  expectation, much less a right, to the granting of an extension."  *Id.*

22         As detailed above, Plaintiffs have again asserted that Defendants violated their due process rights

23  "in refusing to provide a reasonable accommodation to Ms. Burgess in the form of an extension of her

24  Section 8 voucher."  (SAC at ¶39.)  Citing the Ninth Circuit's prior decision, Defendants assert that this

25  claim is subject to dismissal because Plaintiffs have failed to established deprivation of any

26  constitutionally-protected right.  Further, they argue that, even though Ms. Burgess did not have a

27  constitutionally-protected right to a voucher extension, Defendants nevertheless granted Ms. Burgess a

28  60-day extension on top of the initial 120-day voucher extension, thereby giving Ms. Burgess 180 days

**United States District Court**
For the Northern District of California

to secure housing in Contra Costa County.  They argue that Ms. Burgess failed to secure housing with that period and did not request that Defendants grant her a further extension of the voucher.  Accordingly, Defendants contend that they are entitled to summary judgment on Plaintiffs' due process claim as a matter of law.

In response, Plaintiffs contend that they had a constitutionally and statutorily-protected property interest in their Section 8 benefits, and that Defendants' failure to properly process Ms. Burgess' portability paperwork deprived them of that interest.  In support, Plaintiffs rely primarily on the Supreme Court's decision in *Wright v. Roanke Redevelopment & Housing Authority*, 479 U.S. 418, 429-30 (1987), and *Ressler v. Pierce*, 692 F.2d 1212, 1215-16 (9th Cir. 1982).  Additionally, Plaintiffs contend that they had an interest in ensuring that their Section 8 benefits were properly transferred to HACCC pursuant to 24 C.F.R. §982.355.  This regulation requires that, during the portability process, the "initial [public housing agency] give the receiving [public housing agency] the most recent HUD form 50058 (Family Report) for the family and related information."  24 C.F.R. §982.355(c)(4).  Plaintiffs assert that, although Defendants maintain that they mailed this information to the HACCC in a portability packet, Plaintiffs have proffered sufficient evidence establishing that Defendants failed to comply with the regulation.

In *Ressler*, the Ninth Circuit rejected the Secretary of Housing and Urban Development's argument that an applicant for Section 8 benefits does not have a protectable property interest in Section 8 benefits because housing projects owners are vested with discretion in selecting applicants.  Instead, the Ninth Circuit held that the regulations and guidelines promulgated under Section 8 "closely circumscribe" a project owner's discretion during the applicant selection process.  Specifically, the court noted that the regulations dictate what percentage of the Section 8 contract units an owner must rent to "very low income families," and required the owner to select eligible tenants in accordance with a HUD-approved marketing plan.  The court also noted that HUD's administrative guidelines set eligibility standards for Section 8 applicants, provided detailed application and instruction forms, established rules for the calculation of an applicant's income, and required HUD review of all certificates of eligibility after determinations had been made by project owners.  The court held that restrictions such as these on the selection process created a property interest in Section 8 benefits.  Notably, the Court went on to hold

that, in addition, the plaintiff "ha[d] a constitutionally protected 'property' interest in Section 8 benefits by virtue of her membership in a class of individuals whom the Section 8 program was intended to benefit." Citing 42 U.S.C. § 1437f(a), the court reasoned that the plaintiff "is a primary beneficiary of the Section 8 program, and her receipt of benefits is closely monitored by HUD under the implementing regulations and guidelines." The court therefore concluded that the plaintiff "thus has a sufficient 'property' interest in Section 8 benefits to entitle her to due process safeguards in the processing of her application."

The Court finds the reasoning set forth in *Ressler* equally applicable in this instance. Like the plaintiff in *Ressler*, Ms. Burgess is a member of the class of individuals that Section 8 program was intended to benefit. In fact, having already been a recipient of Section 8 benefits, Ms. Burgess is beyond the plaintiff in *Ressler*, who, by comparison was seeking to apply for Section 8 housing subsidies. Thus, as the Ninth Circuit concluded in that case, Ms. Burgess also has a constitutionally protected property interest in her Section 8 benefits that entitle her to due process safeguards. Further, in *Ressler*, the Ninth Circuit held that the plaintiff's protectable interest in Section 8 benefits entitled her to due process safeguards in the processing of her application. Here, although poorly articulated, the essence of Plaintiffs' due process claim is that, in failing to adhere to the regulations controlling the portability process, including transferring Ms. Burgess's portability paperwork to the HACCC, Plaintiffs were deprived of the procedural protections that exist to safeguard that Plaintiffs continue to receive Section 8 benefits when they move to another public housing agency's jurisdiction. In other words, Plaintiffs are claiming that Defendants' purported failure to properly process the portability paperwork resulted in a paralysis of the portability process and, ultimately, the loss of Ms. Burgess's Section 8 voucher. Accordingly, because Plaintiffs have a recognized, protectable property interest in Section 8 benefits, and have alleged that Defendants' conduct deprived them of that interest, they have asserted a viable procedural due process claim. Moreover, reviewing the record evidence, the Court finds that Plaintiffs have proffered sufficient evidence creating a triable issue of fact as to whether Defendants failed to properly transfer Ms. Burgess's portability packet to the HACCC.

### b.    The Individual Defendants

Nevertheless, Defendants argue that should the Court find that Plaintiffs have suffered a violation

United States District Court

For the Northern District of California

of their civil rights, Defendants Basgal, Barn, and Payne (the "Individual Defendants") are entitled to qualified immunity.  As Defendants correctly point out, the threshold question is whether a party has suffered a constitutional violation.  *See Sacier v. Katz*, 533 U.S. 194 (2001).  If the Court finds that a violation could be made out on a favorable view of the plaintiffs' submissions, the next inquiry is whether the right violated was clearly established.  *Id.*  In their Motion, Defendants argue that the law did not clearly establish that Ms. Burgess was entitled to further extensions of her Section 8 voucher.  They further contend that Defendants complied with all applicable regulations pertaining to extensions of a Section 8 voucher.

As discussed above, however, the basis of Plaintiffs' due process claim is that, by failing to comply with the regulations requiring ACHA to process Ms. Burgess's portability paperwork so that she could move to the apartment in Concord, Defendants deprived them of their protected property interest in Section 8 benefits.  Thus, while Plaintiffs may not have had a protected property interest in obtaining extensions of the Section 8 voucher, as the Ninth Circuit recognized in *Ressler*, Plaintiffs have a protected interest in their continued receipt of Section 8 benefits.  As such, Defendants were required to comply with the regulations related to processing  Ms. Burgess's portability paperwork to ensure continued receipt of such benefits during and after the portability process.  Moreover, because the violations that Plaintiffs have alleged resulted in deprivation of their property interest are based on federal regulations promulgated under Section 8, the Court fails to see how Defendants can argue that the law was not clearly established.  That being said, because the parties have presented sufficient evidence creating a triable issue of fact as to whether the Individual Defendants' conduct actually violated these statutes, for example, by failing to transfer Ms. Burgess's Family Report pursuant to 24 C.F.R. § 982.355(c)(4), the Court cannot rule as a matter of law that the Individual Defendants' conduct violated these clearly established constitutional rights.  The Court therefore **DENIES** summary judgment on the Individual Defendants' qualified immunity argument without prejudice to the Individual Defendants re-asserting this defense at trial.

### c.      ACHA's Liability Under *Monell*

Defendants also argue that, even if Plaintiff can establish that they suffered a violation of their civil rights, ACHA is entitled to summary judgment because there is no evidence that such violation was

caused by a policy, practice, or custom, sufficient to give rise to liability under *Monell v. New York Dep't.*
*of Social Servs.*, 436 U.S. 658, 689 (1978).

In opposition, Plaintiffs argue that Plaintiffs' constitutional deprivation was due to several of
ACHA's policies and practices.  Specifically, Plaintiffs argue that Plaintiffs' lost their Section 8 benefits
because of: (1) ACHA's policy of practice of not ensuring that transferee housing authorities received
portability packets that ACHA sent out; (2) ACHA's policies prohibiting Section 8 participants from
hand carrying portability packets to transferee housing authorities; (3) ACHA's policy of requiring a
Section 8 participant to give their landlord a 30-day notice before ACHA would prepare a portability
packet.

In their Reply, Defendants argue that Plaintiffs have failed to present any admissible evidence
that in support of their allegation that ACHA had a policy or practice of not ensuring that the transferee
housing authorities received portability packets that ACHA sent.  They further argue that, "even if
[Plaintiffs'] speculative argument that [ACHA] 'never actually received Plaintiffs' portability packet'
were considered, 'proof of a single incident of unconstitutional activity is not sufficient to impose
liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing,
unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  (Reply
at 14 (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-34 (1985)).  In addition, Defendants
contend that Plaintiffs assertion that ACHA's policies of "prohibiting Section 8 participants from hand
carrying portability packets to transferee authorities and requiring a Section 8 participant to give their
landlord a 30-day notice before [ACHA] would prepare a portability packet," cannot support *Monell*
liability because these policies were promulgated by HUD, not ACHA.  (*Id.* citing 24 C.F.R.
§§982.314(b), 982.354(c)(4) (1999)).

Considering the parties' argument and reviewing Plaintiffs' evidence in support, the Court agrees
with Defendants.  As Defendants correctly point out, Plaintiff have failed to proffer evidence supporting
their assertion that ACHA had a policy of not ensuring that transferee housing authorities received
portability paperwork that ACHA sent out.  Particularly, the only evidence Plaintiffs offer in support of
their assertion is Ms. Barn's deposition testimony that once the portability packet is mailed, faxed, or
carried out by the tenant, Defendants "were done with [their] part," and that, as far as she could

1   remember, ACHA did not have a policy requiring employees to follow up with receiving housing

2   authorities to confirm that they received a portability packet.  (Doc. #180, Contreau decl., Ex. I at 20:17-

3   22, 53:12-16.)  While ACHA may not have had a policy in force directing employees to confirm receipt

4   of portability packets, Ms. Barn's testimony does not establish that ACHA had a policy in place directing

5   employees *not* to ensure that transferee housing authorities received portability packets, as Plaintiffs

6   contend.  Thus, Plaintiffs have failed to substantiate their claim that such a policy existed, such that

7   Defendants would be exposed to municipal liability.  Furthermore, as Defendants point out, the other two

8   policies that Plaintiffs cite in support of their municipal liability claim were not promulgated by ACHA,

9   but by HUD.  As such, Plaintiffs cannot seek to hold ACHA liable based on their requirements.  Taken

10  together, the Court finds that Plaintiffs have failed to present adequate evidence that ACHA had a policy,

11  practice, or custom in place that led to the violation of Plaintiffs' civil rights.  Accordingly, the Court

12  **GRANTS** summary judgment in favor of ACHA on Plaintiffs' *Monell* claim.

13          **F.      Fourth Claim for Relief - Violation of Unruh Civil Rights Act, California Civil Code**

14                   **§51**

15          California's Unruh Civil Rights Act provides that, "All persons within the jurisdiction of this state

16  are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability,

17  medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations,

18  advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

19  Cal. Civil Code §51(b).  The Unruh Act expressly provides that "[a] violation of the right of any

20  individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute

21  a violation of this section."  Cal. Civil Code §51(f).  Here, because Plaintiffs have not established any

22  violation under the ADA, any Unruh Act claim premised on an ADA violation fails.  Further, to the

23  extent that Plaintiffs assert an Unruh Act claim based on a failure to accommodate Ms. Burgess's

24  disability, such a claim fails for the reasons set forth in the discussions of Plaintiffs' FHA and ADA

25  claims.  Finally, to the extent that Plaintiffs assert that Defendants intentionally discriminated against

26  Plaintiffs because of Ms. Burgess's disabilities, Plaintiffs have failed to proffer any evidence that any of

27  Defendants' acts, even if assumed to be true, were based on Ms. Burgess's disability.  The Court

28  therefore **GRANTS** summary judgment in favor of Defendants on Plaintiffs' Unruh Act claim.

**United States District Court**
For the Northern District of California

### G.    Fifth Claim for Relief - Violation of California Government Code § 11135

Plaintiffs have asserted a claim for violation of California Government Code § 11135 against the County and ACHA.  ACHA moves for summary judgment on this claim, on the basis that "neither [ACHA] nor the County are programs or activities that are conducted, operated, or administered by the state of by any state agency and do not receive any financial assistance from the state to operate the Section 8 rental assistance program."  As ACHA correctly points out, California Government Code prohibits unequal treatment or discrimination in "any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."  Plaintiffs have not presented any argument in response.  Accordingly, because it is undisputed that ACHA does not receive any financial assistance from the State of California in administering the Section 8 program, Plaintiffs' claim under California Government Code § 11135 fails as a matter of law.  The Court therefore **GRANTS** summary judgment in favor of ACHA on this claim.[4]

### H.    Sixth Claim for Negligence and Seventh Claim for Negligent Infliction of Emotional Distress

Defendants move for summary judgment on Plaintiffs' claims for negligence and negligent infliction of emotional distress.  In support, Defendants contend that these claims are barred because Plaintiffs failed to present a timely notice of tort claim to ACHA, as required by California law.  Under California Government Code §950.2, in an action for money damages against a public entity, a written claim must be presented to the public entity as a condition precedent to suit.  Government Code §945.4 provides that "no suit for money damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon."  Correspondingly, California Government Code §911.2 requires that claims "relating to  cause of action for death of for injury to person" must be presented no later than six months after the cause of action has accrued.  In their Motion, Defendants argue that because Plaintiffs' negligence and emotional distress claims accrued on November 21, 1999 - the date Plaintiffs became homeless - they had to present a written claim to ACHA within six months of that date.  Because Plaintiffs did not serve a written notice of claim until October 22, 2001, Defendants assert that Plaintiffs'

---

[4]As set forth above, the Court dismisses all claims against Alameda County.  However, the reasoning set forth with respect to Plaintiffs' §11135 claim against ACHA also is applicable to the County.

1  negligence and emotional distress claims are barred under California law.

2        Plaintiffs counter that, because they did not learn until June 15, 2001 that Defendants

3  misrepresented that they sent the portability packet, their negligence and negligent infliction of emotional

4  distress claims did not accrue until that time. As such, their October 22, 2001 notice of claims was

5  timely. The Court, however, disagrees. The alleged failure to send the portability packet is but one of

6  a plethora of wrongs Plaintiffs allege; indeed, they have essentially alleged that Defendants mishandled

7  the portability process from time that Ms. Burgess initiated the process in September 1999. Plaintiffs

8  were on notice well before June 21, 2001 that they may have a claim against Defendants. Plaintiffs'

9  cause of action accrued on November 21, 1999. Accordingly, Plaintiffs were required to properly file

10 a notice of claim with the ACHA within six months of that date. Because they failed to comply with this

11 requirement, the Court finds that Plaintiffs' claims for negligence and negligent infliction of emotional

12 distress are barred. The Court therefore **GRANTS** summary judgment in favor of Defendants on these

13 claims.

14 **IV.**      **Conclusion**

15       For the foregoing reasons, the Court rules as follows:

16       The Court **GRANTS** summary judgment in favor of Defendant County of Alameda on all claims.

17       The Court **GRANTS** summary judgement in favor of Defendant ACHA on all claims.

18       The Court **GRANTS** summary judgment in favor of the Individual Defendants as to the First,

19 Second, Fourth, Fifth, Sixth, and Seventh claims.

20       The Court **DENIES** the Individual Defendants' Motion for Summary Judgment as to the Third

21 claim **WITHOUT PREJUDICE** to the Individual Defendants' right to assert the qualified immunity

22 privilege at trial.

23 **IT IS SO ORDERED.**

24

   Dated: December 30, 2006.

25                           MARTIN J. JENKINS
                          UNITED STATES DISTRICT JUDGE

26

27

28

*United States District Court*
For the Northern District of California